## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JAMES WILLIAMS, JR., #K03023** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Case No. 3:21-cv-00448-GCS** |
| **LUKING, LPN WELTY, LYNN** | ) | |
| **PITTMAN, and WEXFORD HEALTH** | ) | |
| **SOURCES,** | ) | |
| | ) | |
| **Defendant.** | | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff James Williams, Jr., an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Lawrence Correctional Center, brought suit pursuant to 42 U.S.C. § 1983 against Defendants Welty, Luking, Pittman, Cunningham, and Livingston, as well as corporate Defendant Wexford Health Sources, Inc. ("Wexford") on May 5, 2021. (Doc 1). The suit stems from the medical treatment that Plaintiff received on November 18, 2019. Plaintiff alleges that Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Plaintiff is a *pro se* litigant. Pending before the court is Defendants' motion to dismiss Plaintiff's suit pursuant to Federal Rules of Civil Procedure 12(b)(6). (Doc 19). For the reasons outlined below, the motion is **DENIED**.

## FACTUAL ALLEGATIONS

In his complaint, Plaintiff alleges that he started experiencing abdominal pains around 1:30 a.m. on November 18, 2019. Plaintiff states that around 3:30 a.m. he was taken to the healthcare unit, where Nurse Welty "took his vitals . . . labeled him as having gas pains, gave him Tums, and sent him back to his cell." (Doc 10, p. 2).

At 7:00 a.m., Plaintiff was discovered on the floor of his cell in pain and was returned to the healthcare unit, where Nurse Practitioner Luking examined Plaintiff. (Doc. 10, p. 2). However, Nurse Luking did not have access to Plaintiff's recent medical complaints; Nurse Welty "did not inform anyone that [Plaintiff] had previously been in pain or that his blood pressure was high." *Id*. According to Plaintiff, Nurse Luking "again diagnosed him with gas." *Id*.

Although Nurse Luking ordered x-rays, none were taken at that time because "the [x-ray] technician would not be available until noon." (Doc. 10, p. 2). Further, no doctor saw Plaintiff during his second medical visit because "doctors [we]re not present at the facility on Mondays." *Id*. However, Plaintiff alleges that Dr. Lynn Pittman was notified by phone regarding his condition, but Dr. Pittman did not order him to be transported to the hospital for several hours. (Doc. 1, p. 8). Plaintiff alleges that despite being in "extreme pain," he was not taken to an outside hospital until after 2:30 p.m. – thirteen hours after Plaintiff initially started experiencing stomach pain, almost twelve hours after Plaintiff was initially seen by Nurse Welty, and more than seven hours after Plaintiff first arrived at the healthcare unit and was seen by Nurse Luking. *Id*. After arriving at the outside

hospital, an x-ray revealed that Plaintiff had gallstones. *Id.* Plaintiff was scheduled for surgery the following day. *Id.*

On November 23, 2021, the Court conducted a preliminary screening of Plaintiff's claims pursuant to 28 U.S.C. § 1915A. *See generally* (Doc. 10). The Court dismissed the claims against Defendants Cunningham, Livingston, and Brookhart without prejudice, holding that Plaintiff had failed to plead sufficient facts to state a claim upon which relief could be granted. *Id.* at p. 4-5. However, the Court allowed Plaintiff's claims against Defendants Welty, Luking, and Pittman, as well as against corporate Defendant Wexford, to move forward, holding that Plaintiff had successfully stated a claim for deliberate indifference under the Eighth Amendment. *Id.*

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim," showing that the plaintiff is entitled to relief. *See* FED. R. CIV. PROC. 8(a)(2). When considering a motion to dismiss under Rule 12(b)(6), this Court determines whether a complaint includes enough factual content to give the opposing party notice of what the claim is and the grounds upon which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *Equal Employment Opportunity Comm. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). It must also include factual matter sufficient to state a facially plausible claim for relief allowing a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550 U.S. at 570). "Even the liberal notice pleading allowed by the federal rules requires the

complaint to include the operative facts upon which a plaintiff bases his claim." *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 198 (7th Cir. 1985). This standard mandates more than "a sheer possibility" that a defendant acted unlawfully; "[t]hreadbare recitals of the elements of a cause of action" and mere conclusory statements are insufficient. *Iqbal*, 556 U.S. at 678.

When evaluating complaints under Rule 12(b)(6), courts accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Ashcroft*, 556 U.S. at 678. Courts are to grant Rule 12(b)(6) motions only if it appears beyond a doubt that the plaintiff cannot prove any facts that would support their claim for relief. *See, e.g.*, *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998)(comparing the standards under Rule 12(c) and Rule 12(b)) (internal citations omitted). "District Courts should not allow motions [to dismiss] to deprive the non-moving party of the opportunity to make its case." *Federated Mutual Insurance Company v. Coyle Mechanical Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020) (examining the equivalent standard under Rule 12(c))(citing *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999)). "Hasty or imprudent" decisions in favor of a motion to dismiss "violate[] the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense." *Id.* (citing 5C Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1368 (3d ed. 2002)). *See also Texas Hill Country Landscaping, Inc. v. Caterpillar, Inc.*, 522 F. Supp.3d 402, 413 (N.D. Ill. 2021)(citing *Fed. Mut. Ins. Co.*, 983 F.3d at 313). Furthermore, the allegations of a *pro se*

complaint are held to a less stringent standard than pleadings drafted by an attorney. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Although Courts are hesitant to consider extrinsic evidence on a motion to dismiss, Rule 10(c) states that a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," and thus exhibits attached to a plaintiff's complaint may be considered. FED. R. CIV. PROC. 10(c). Case law recognizes "that a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims" and that a plaintiff "pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). *See also Jackson v. Marion County*, 66 F.3d 151, 153-154 (7th Cir. 1995)(finding that allegations "in the complaint are binding admissions, and admissions can of course admit the admitter to the exit of the federal courthouse.") (internal citations omitted); *Wilson v. Groze*, 800 F. Supp.2d 949, 954 (N.D. Ill. 2011)(holding that "dismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when plaintiff effectively pleads h[im]self out of court by alleging facts that are sufficient to establish the defense"). Furthermore, "if the plaintiff voluntarily provides unnecessary facts in h[is] complaint, the defendant may use those facts to demonstrate that she is not entitled to relief." *Tamayo*, 526 F.3d at 1086.  An analysis conducted pursuant to § 1915A is based on the same *Twombly* pleading standard as the present 12(b)(6) motion. *See, e.g., Weiss v. Cooley*, 230 F.3d 1027, 1029 (7th Cir. 2000)(stating that this "standard, derived from Rule 12(b)(6), also applies to the dismissal of claims under § 1915A"). Accordingly, the Court

will apply the same standard as that used in the initial merit review of Plaintiff's complaint. *See generally* (Doc. 10).

Defendants' primary argument is that Plaintiff's claim should be dismissed for failing to state a claim upon which relief can be granted. A plaintiff bringing a § 1983 claim must allege facts sufficient to show that: (1) the defendants were acting under color of state law, and (2) the defendants deprived him of a right or interest secured by the Constitution or laws of the United States. *See Payne v. Churchich*, 161 F.3d 1030, 1039 (7th Cir. 1998)(citing *Stevens v. Umsted*, 131 F.3d 697, 700 (7th Cir. 1997)). Private physicians under contract with the state to provide medical care on a full-time or part-time basis to prisoners qualify as a state actor under § 1983. *See West v. Atkins*, 487 U.S. 42, 55 (1988). Prison nurses who participate in the unconstitutional deprivation of medical care can also qualify as state actors within the meaning of § 1983. *See, e.g., Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010)(finding that although nurses generally defer to instructions given by physicians, "that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient," and thus the prison nurses' conduct raised issues of fact that barred summary judgment in their favor). The current dispute centers on the second prong of Section 1983, *i.e.*, whether Defendants deprived Plaintiff of a right or interest secured by the Constitution or the laws of the United States. Plaintiff alleges that Defendants violated his rights under the Eighth Amendment, which "protects prisoners from deliberate indifference to a serious injury or medical need." *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

ANALYSIS

**I.      Whether Merit Review Pursuant to § 1915A Forecloses a Motion to Dismiss.**

Defendants move to dismiss Plaintiff's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). As a preliminary matter, Defendants argue that surviving a § 1915A screening does not preclude a subsequent 12(b)(6) motion to dismiss. To support this position, Defendants rely on two unpublished cases: (i) *Roberts v. Peters*, No. 96-3680, 1997 WL 657016, at *1 (7th Cir. Oct. 16, 1997); and (ii) *Robinson v. Detella*, No. 95 C 4067, 1996 WL 422154, at *1 (N.D. Ill., July 24, 1996). However, neither *Roberts* nor *Robinson* directly confronts this issue. In *Roberts*, the Seventh Circuit acknowledges that the district court adopted the report and recommendation of the magistrate judge to dismiss the case. 1997 WL 657016 at *2 n.3. The plaintiff in that case appealed from an order granting a motion to dismiss. As § 1915A(a) requires the Court to review a prisoner's civil complaint as soon as practicable after docketing, this case implies that screening pursuant to § 1915A does not foreclose review of a motion to dismiss for failure to state a claim.[1] Nevertheless, the Seventh Circuit did not directly address the issue of adjudicating a Rule 12(b)(6) motion after an initial screening of a complaint had been done under § 1915A(a).

Defendants' support for conducting an additional review of this case based on *Robinson* is also, at best, implied. The Northern District of Illinois did consider a motion

---

[1]      Congress last updated § 1915A in April 1996. *See* Pub. L. 104-134, title I, § 101(A), Apr. 26, 1996, 110 Stat. 1321, 1321-1375; renumbered title I, Pub. L. 104-140, § 1(a), May 2, 1996, 110 Stat. 1327. Both *Robinson* and *Roberts* post-date § 1915A(a)'s mandate that the Court review a prisoner's civil complaint as soon as practicable, supporting the inference that some courts will review a motion to dismiss after conducting such a review.

to dismiss in that case. *See generally Robinson*, 1996 WL 422154, at *1. However, the Court did not directly address whether the motion was superfluous at that stage of the proceedings, nor did it provide explicit support for considering a motion to dismiss after conducting a § 1915A review. *Id.* at *3. Thus, neither *Roberts* nor *Robinson* clearly establishes whether surviving a § 1915A screening forecloses a 12(b)(6) motion to dismiss. As such, this appears to be an issue of first impression for the Seventh Circuit.

There appears to be a split in authority regarding the effect of a § 1915A screening on a subsequent motion to dismiss. Because the same pleading standard is used for both a § 1915A screening and a 12(b)(6) motion to dismiss, some courts outside the Seventh Circuit have found that surviving a § 1915A screening creates a rebuttable presumption that Plaintiff *has* pled sufficient facts to state a claim. *See, e.g., Murray v. Corrections Corp. of America*, No. CV 11-2210-PHX-RCB (JFM), 2012 WL 2798759, at *3 (D. Ariz. July 9, 2012)(finding that a Rule 12(b)(6) motion to dismiss is "almost never" appropriate when the Court has already screened a prisoner complaint pursuant to § 1915A and applying the standard for reconsideration of a prior order to the motion); *Chavez v. Yates*, No. 1:09–cv–01080–AWI–SKO PC, 2013 WL 5519594, at *2 (E.D. Cal. Oct. 3, 2013)(holding that motions to dismiss previously-screened prisoner complaints which fail to articulate the reason for the motions in light of the prior orders "implicate the law of the case doctrine, unnecessarily multiply the proceedings, and fall well below the level of practice which is expected in federal court"). On the other hand, some courts within the Seventh Circuit have rejected this position, holding that surviving a § 1915A screening should have no

binding effect on a subsequent 12(b)(6) motion to dismiss because such screenings are "performed without any adversarial development of the issues." *Harris v. Ruthenberg*, 62 F. Supp.3d 793, 801 (N.D. Ill. 2014).

The Court finds the reasoning of the courts outside the Seventh Circuit more persuasive than that the reasoning of the district court in *Harris*. Continuing to examine a prisoner complaint after conducting a § 1915A screening, when the plaintiff has not amended the complaint, undermines the purpose of the screening. Successive reviews of a plaintiff's complaint unnecessarily multiples the proceedings and asks the Court to overturn the law of the case before it. Similarly, if the defendants do articulate reasons as to why the initial screening was insufficient, the standard under which the Court should examine the motion should be the standard applicable to a motion for reconsideration. This is because the defendants are essentially taking the position that the Court has committed an error of law or fact in making its initial decision on the sufficiency of the complaint.[2] Holding the defendants to this standard to avoid duplicative pleadings does not foreclose the possibility of developing the issues in an adversarial manner. To the contrary, applying the standard for a motion for reconsideration forces the parties to analyze the sufficiency of the screening and the complaint themselves before raising any

---

[2]     The standards applicable to a motion for reconsideration are outlined in Federal Rules of Civil Procedure 59(e) and 60(b). Rule 59(e) authorizes relief only in "exceptional cases" and permits a court to amend an order or judgment only if the movant demonstrates a manifest error of law or fact, or if the movant presents newly discovered evidence that was not previously available. *See Willis v. Dart*, No. 16-1498, 671 Fed. Appx. 376, 377 (7th Cir. Dec. 9, 2016)(quoting *Gonzalez–Koeneke v. West.*, 791 F.3d 801, 807 (7th Cir. 2015)). Rule 60(b) permits a court to relieve a party from an order or judgment based on such grounds as mistake, surprise or excusable neglect by the movant; fraud or misconduct by the opposing party; a judgment that is void or has been discharged; or newly discovered evidence.

alleged deficiencies in a motion for reconsideration. This standard therefore promotes judicial efficiency, the interests of justice, and adherence to the law of the case doctrine. The Court therefore finds that a § 1915A screening *does* foreclose a motion to dismiss pursuant to Rule 12(b)(6) as a successive and *de novo* review of the legal sufficiency of a complaint after an initial screening has been conducted. To the extent such a motion is filed, it will be treated as a motion for reconsideration, with the more rigorous burdens associated with the motion imposed upon the moving party.

## II.   Whether Plaintiff has Stated a Claim Against Defendants Luking, Welty, and Pittman.

Even when treating Defendants' motion as one for reconsideration of the § 1915A screening order, reconsideration is not warranted in this case. The strongest argument in favor of Defendants' motion is that reconsideration of the § 1915A order is warranted because the Court committed a manifest error of law in permitting the complaint to survive. To state a claim for deliberate indifference, an inmate must put forward facts implicating both an objective and subjective element, namely that: (1) an objectively serious medical need was deprived, and (2) the official knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it. *See Chapman*, 241 F.3d at 845 (citing *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999)). *See also Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). When determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs, courts should consider the totality of the received medical care. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000). Because Plaintiff's complaint is *pro se*, the Court construes it

"liberally," holding it to a "less stringent standard than formal pleadings drafted by lawyers." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)(quoting *Arnett*, 658 F.3d at 751).

Prison physicians are liable under the Eighth Amendment if they intentionally disregard a known, objectively serious medical condition that poses an excessive risk to an inmate's health. *See Gonzalez v. Feinerman*, 663 F.3d 311, 313-314 (7th Cir. 2011)(citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The condition need not be life threatening to be considered objectively serious. *See, e.g., Gonzalez*, 663 F.3d at 315 (holding that a "[d]elay in treating a condition that is painful even if not life-threatening may well constitute deliberate indifference"). In fact, pain itself can in certain circumstances constitute a separate, objectively serious condition in addition to the underlying medical condition. *See Farmer*, 511 U.S. F.3d at 779 (citing *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008)).

The second prong of the deliberate indifference standard requires a mental state "somewhere between the culpability poles of negligence and purpose," and is therefore encapsulated by "reckless disregard." Perez, 792 F.3d at 777. *See also Rosario v. Brawn*, 670 F.3d 816, 821-822 (7th Cir. 2012)(noting that the standard for deliberate indifference is a "high hurdle on plaintiffs") (internal citations omitted). Deliberate indifference is not merely a difference of opinion on how to treat a medical condition. *See Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001). Nor is deliberate indifference demonstrated by a prisoner's dissatisfaction with a physician's prescribed course of treatment. *See Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Furthermore, deliberate indifference

does not include *inadvertent* failures to provide adequate medical care; to be cognizable, the denial must be *deliberate*. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 106 (1976)(holding that only *deliberate* indifference "can offend 'evolving standards of decency' in violation of the Eighth Amendment") (emphasis added). This is true even if the conduct rises to the level of negligent or even grossly negligent conduct. *See Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). Thus, it requires conduct "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes*, 95 F.3d at 592. For example, the Supreme Court held that discretionary decisions of medical judgment, such as the decision of whether to order an X-ray or other additional diagnostic techniques, "does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107. Despite this high bar, the intentional delay of medical care may nevertheless constitute deliberate indifference if that that delay demonstrates an intentional disregard for a known and serious medical condition. *See Estelle*, 429 U.S. at 104.

Here, Plaintiff has pled sufficient facts to establish that his injury or medical condition was objectively serious. In addition to the gallstones themselves, Plaintiff also reported experiencing "extreme pain." (Doc 10, p.2). Plaintiff alleges that Defendants Welty and Luking ignored this painful condition. This qualifies as deliberate indifference because pain may constitute a serious medical condition regardless of whether his underlying condition was life-threatening. *Id*. Furthermore, Plaintiff alleges that Defendants Welty and Luking should have immediately contacted Dr. Pittman instead of waiting several hours before the test results were returned. This delay likewise could constitute deliberate indifference to his serious medical condition. Lastly, Plaintiff alleges

that Defendant Cunningham "was aware that there was not a doctor present at the facility on Monday, but he did not ensure that he received proper medical care from the medical staff." *Id*. In the totality of the circumstances, these allegations are sufficient to satisfy the deliberate indifference standard.

Defendants claim that documents Plaintiff attached to his own complaint foreclose his claims. Defendants rely on Plaintiff's Exhibit 1 and Exhibit 2 to argue that Plaintiff received adequate care. (Doc 19). These documents indicate that Plaintiff was given Toradol pain medication within ten minutes of his appointment with Nurse Luking, at which point Nurse Luking ordered an abdominal x-ray, a urine test, and bloodwork. (Doc. 19, at p.3). Defendants also characterize Plaintiff's allegation that he was misdiagnosed with gas as both incorrect (because attached medical records indicate that he was actually diagnosed with "acute medical pain") and insufficient (because a misdiagnosis alone is insufficient to establish unconstitutional deliberate indifference). (Doc 19, at p. 5). Furthermore, Defendants rely on Exhibit 2 to establish that Plaintiff's testing was expedited, and that Dr. Pittman was consulted by phone for Plaintiff's care, thus challenging Plaintiff's argument that a physician did not treat him. *Id*. Finally, Defendants note that Plaintiff did not undergo surgery until the day *after* being transferred to the hospital. Thus, according to the Defendants, this demonstrates that Plaintiff did not, in fact, require immediate surgical intervention. *Id*.

Defendants' arguments regarding the high bar required for a showing of deliberate indifference are well-taken. However, they do not establish that Plaintiff has failed to state a claim for deliberate indifference under the low bar that Rule 12(b)(6) sets.

Courts are to grant Rule 12(b)(6) motions only if it appears beyond a doubt that the plaintiff cannot prove any facts that would support their claim for relief. It is true that *Estelle* clarified that the decision to administer additional diagnostic techniques (such as an x-ray) is "a classic example of a matter for medical judgment," and a "medical decision not to order an X-ray . . . does not represent cruel and unusual punishment[.]" *Estelle*, 429 U.S. at 107. Here, after observing Plaintiff, Defendant Luking's medical judgment was to order an X-ray. However it was not administered because the technician was not present until noon. (Doc 10, p. 2). As such, the decision to wait until the x-ray technician arrived at noon arguably was not a matter of medical judgment, but rather a decision based on convenience.

A prisoner need not show that he was "literally ignored" in order to state a claim for deliberate indifference, and the receipt of some medical care does not "automatically defeat" such a claim. *Perez*, 792 F.3d at 777 (internal citations omitted). For example, in *Perez*, the district court initially dismissed the plaintiff's claim pursuant to § 1915A because the plaintiff stated in his complaint that he received "immediate" and "continuing" attention from prison staff for a serious injury. *Id.* However, the Seventh Circuit reversed this decision, noting that:

> [i]f all the Eighth Amendment required was that prison officials provide some 'immediate and ongoing attention,' they could shield themselves from liability . . . by shuttling sick or injured inmates to perfunctory medical appointments where no meaningful treatment is dispensed. Needless to say, the responsibilities imposed by the Constitution are not so easily avoided.

*Id.* Equally, Plaintiff's assertion that the nurse defendants eventually shuttled him to medical appointments in his complaint does not defeat his claim and does not support

dismissing his case under Rule 12(b)(6). As Plaintiff's complaint alleges sufficient facts to survive a motion to dismiss, and as held in the initial § 1915A screening, the Court finds it did not make a manifest error of law in finding that the complaint was sufficient.

### III.     Whether Plaintiff has Stated a Claim Against Defendant Wexford.

Regarding corporate Defendant Wexford, *respondeat superior* does not apply to private corporations under § 1983. *See Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014)(*citing Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)). In *Monell v. Dep't of Social Services of the City of New York*, however, the Supreme Court held that a municipality may be liable under § 1983 for constitutional violations resulting from a policy or custom of the municipality. 436 U.S. 658, 690–691 (1978). The Seventh Circuit has extended *Monell* beyond municipalities to include private corporations providing government services, such as Defendant Wexford. *See Shields*, 746 F.3d at 789. A private corporation contracting to provide healthcare to inmates may be liable for customs or policies which violate an inmate's constitutional rights. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). *See also Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010)(stating that such "contractors are treated the same as municipalities for liability purposes in a § 1983 action") (internal citations omitted). Therefore, like municipalities, a corporation that has contracted to provide essential government services may be held liable under § 1983 for violations caused by unconstitutional policies or customs. *See Shields*, 746 F.3d at 789. Thus, Wexford can be held liable for deliberate indifference if it had an unconstitutional policy or practice that caused the constitutional deprivation. *Id*.

A plaintiff may show liability under *Monell* in three ways. First, a plaintiff may establish that the unconstitutional action "'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017)(en banc) (quoting *Los Angeles County v. Humphries*, 562 U.S. 29, 35 (2010)). Second, the plaintiff may prove that a custom was created by "'those whose edicts or acts may fairly be said to represent official policy.'" *Id.* (quoting *Monell*, 436 U.S. at 690-691). Lastly, a plaintiff may demonstrate liability by establishing a widespread custom. *Id.* Liability may extend to customs "so permanent and well settled as to constitute a custom or usage with the force of law" even though they received no formal approval. *Monell*, 436 U.S. at 91 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168 (1970)).

A widespread custom may be established by evidence of policymaking officials' knowledge of and acquiescence to the unconstitutional practice. *See McNabola v. Chicago Transit Authority*, 10 F.3d 501, 511 (7th Cir. 1993), *overruled in part and on other grounds by Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 106 F.3d 1388, 1402-1403 (7th Cir. 1997). This standard is similar to that required to show deliberate indifference; a plaintiff may show that officials knew of and acquiesced to a risk created by a custom or practice, but nevertheless failed to take steps to protect the plaintiff. *See Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). Sufficient evidence may include proof that the practice was so "long standing or widespread" that it would "support the inference that policymaking officials 'must have known about it but failed to stop it.'" *McNabola*, 10 F.3d at 511 (quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)). If

officials would be required to make a new rule or regulation in order to end the unconstitutional policy, the failure to do so is also sufficient evidence of acquiescence. *See Thomas*, 604 F.3d at 303 (citing *Sims v. Mulcahy*, 902 F.2d 524, 543 (7th Cir.1990)). Similarly, senior officials may be liable if they personally created the policies, practices, or customs at issue. *See Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 615 (7th Cir. 2002).

Plaintiff's only surviving claim against Wexford is Wexford's alleged policy of not staffing a physician at the facility on Mondays. A defendant must have actual or constructive notice of an omission in its policies which result in constitutional violations in order to be liable under *Monell. See Connick v. Thompson*, 563 U.S. 51, 61 (2011). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at 61. Accordingly, a plaintiff may demonstrate a defendant's actual or constructive knowledge through one of two paths: (i) a theory predicated on a prior pattern of similar constitutional violations; or (ii) a "single-incident" theory predicated on an obvious, but disregarded, risk demonstrated by a violation of a single person's constitutional rights. *See J.K.J v. Polk County*, 960 F.3d 367, 381 (7th Cir. 2020). *See also Id.* at 389 (Brennan, J. dissenting in part) (acknowledging that majority's decision was based on "single-incident theory"); *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 409 (1997)(finding that, in "a narrow set of circumstances[,]" a plaintiff may show *Monell* violations with a "single-incident" theory of liability).

Although Plaintiff does not point to any express policy, he does allege that "doctors are not present at the facility on Mondays." (Doc 10, p. 2).  Under the first path,

it is not impossible for a plaintiff to show a widespread practice or custom using only personal experience, though it is "necessarily more difficult" for that plaintiff to differentiate the alleged practice from a "random event." *Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020)(citing *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) (internal quotations omitted)). However, Plaintiff sufficiently asserts Defendant Wexford's liability through the second evidentiary path. While a party may demonstrate actual knowledge of an unconstitutional policy or custom by pointing to numerous instances of the violation, neither the Supreme Court nor the Seventh Circuit has held that "institutional liability was only possible if the record reflected numerous examples of the constitutional violation in question." *Glisson*, 849 F.3d at 381 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)).[3] *See also Howell,* 987 F.3d at 655 (7th Cir. 2021)(noting that, in the healthcare context, it may be impossible to assign blame to any one individual, but holding that, nevertheless, the entity responsible for the overall policy may be liable) (internal citations omitted); *Daniel v. Cook Cty.*, 833 F.3d 728, 733-734 (7th Cir. 2016) (finding that an entity cannot escape liability under *Monell* by blaming the "system"). The key analysis is whether there was a conscious decision not to take action. *See id.* Accordingly, a plaintiff may show actual knowledge of an unconstitutional policy or custom by demonstrating that the risk of violation was "so obvious that the failure to do so could properly be characterized as deliberate indifference to constitutional rights."

---

[3]     The Seventh Circuit in *Glisson* also supports this proposition by citing to the Ninth and Third Circuits, both of which have also declined to find that a plaintiff must show numerous constitutional violations in order to succeed in a *Monell* claim. 849 F.3d at 381 (citing *Long v. Cnty. of Los Angeles*, 442 F.3d 1178 (9th Cir. 2006); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575 (3rd Cir. 2003).

*Harris*, 489 U.S. at 390 n. 10 (internal quotation marks omitted); *Bryan County*, 520 U.S. at 410 (stating that the key question is whether the defendants "disregarded a known or obvious consequence" of their actions).

The Seventh Circuit outlined such an obvious risk in *Glisson*. Glisson suffered from severe, cancer-related disabilities, which were "apparent at a glance." 849 F.3d at 375. During his trial and prior to his incarceration with the Indiana Department of Corrections ("INDOC"), experts testified that it was highly unlikely that Glisson could survive without specific care. *Id*. Specifically, Glisson required a neck brace, suction machine, mirror, and light for necessary tracheostomies. *Id*. When Glisson was transferred from jail to the Reception Diagnostic Center, INDOC sent with him his mirror, light, and neck brace. *Id*. However, the plaintiff did not receive his neck brace, and no one at INDOC provided a replacement. *Id*.

During this time, Glisson was under the care of Corizon, a private health care provider contracting with INDOC to provide inmates with medical care. *See Glisson*, 849 F.3d at 375. Although multiple treatment providers saw Glisson, no one developed a treatment plan, reviewed his medical history, or followed up on his treatment for twenty-four days. *Id*. at 376. Corizon's treatment resembled a "blind man's description of the elephant[,]" and despite the disjointed care Glisson did receive, his symptoms continued to worsen until he died. *Id*. at 375, 377.

The Seventh Circuit noted that no one person providing Glisson with treatment was deliberately indifferent to his constitutional rights. *See Glisson*, 849 F.3d at 375. Furthermore, at no point did the Seventh Circuit find that multiple inmates were treated

similarly to Glisson. *See generally id*. However, the Seventh Circuit nevertheless found that Corizon made a deliberate policy choice not to require the coordination of medical care within or across institutions for at least seven years. *Id*. at 379, 382.

In finding that Corizon made such a policy choice, the Seventh Circuit compared the situation in *Glisson* to that in *Harris*. *See Glisson*, 849 F.3d at 382. In *Harris*, the Supreme Court noted that it was a "moral certainty" that police officers would be required to arrest fleeing felons; the need to train officers on the use of deadly force was therefore so obvious that the failure to do so constituted deliberate indifference. *Harris*, 489 U.S. at 390 n.10. Similarly, the Seventh Circuit concluded that "[o]ne does not need to be an expert to know that complex, chronic illness requires comprehensive and coordinated care." *Glisson*, 849 F.3d at 382. The need to establish protocols for patients with chronic illnesses was therefore as obvious as the need to train police officers on the use of deadly force. *Id*. From this obvious necessity and Corizon's inaction, the Seventh Circuit concluded that Corizon had actual knowledge of a widespread policy and custom violating the inmate's constitutional rights and that Corizon made a deliberate choice, from various alternative options, to do nothing to remedy that policy. *Id*. (citing *King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012); *Harris*, 489 U.S. at 389).

Defendants point out that when Dr. Pittman was consulted for Plaintiff's care, Dr. Pittman ordered Plaintiff to be sent to a hospital, where he was sent and provided further medical services. Thus, even if it were Wexford's policy to not staff a doctor on Mondays, Defendants argue that Plaintiff *did* have access to and saw a physician on November 18th. Defendants also assert that Plaintiff's argument that Dr. Pittman should have been

contacted sooner is also precluded because it relies on a theory of supervisory authority, and under §1983, Wexford cannot be held liable for the actions of its staff. *See Shields*, 746 F.3d at 795.

However, Defendants fail to address the implicit claim underlying Plaintiff's argument, *i.e.*, that but-for Wexford's policy of not having a physician present on Mondays, Plaintiff would not have experienced *any* delay in treatment. Thus, the resulting delay can be attributed to Wexford's policy itself without relying on a theory of *respondeat superior*. While Defendants are correct to point out that deliberate indifference is a high bar, the standard at the motion to dismiss stage is forgiving, especially to *pro se* plaintiffs. Under this standard, Plaintiff has successfully stated a claim for deliberate indifference against all Defendants, and reconsideration is not warranted in this case. Defendants' motion to dismiss is therefore denied.

## CONCLUSION

For the above-stated reasons, the undersigned **DENIES** Defendants' motions to dismiss. (Doc. 5).

**IT IS SO ORDERED.**

**DATED:  May 26, 2022.**

Digitally signed
by Judge Sison 2
Date: 2022.05.26
13:00:10 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**