UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES WILLIAMS, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:21-cv-00448-GCS |
| | ) |
| CARISSA LUKING, TAMMY WELTY, | ) |
| LYNN PITTMAN, and WEXFORD | ) |
| HELATH SOURCES, INC. ("Wexford"), | ) |
| | ) |
| Defendants. | |

MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

INTRODUCTION

Pending before the Court is Defendants' Motion for Summary Judgment on the issue of exhaustion of administrative remedies. (Doc. 33). On October 5, 2022, the Court held a hearing on the Motion and took the matter under advisement. (Doc. 53). For the reasons delineated below, the Court **DENIES** the Motion for Summary Judgment (Doc. 33).

On May 5, 2021, Plaintiff James Williams Jr., an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Danville Correctional Center, brought this suit against Defendants pursuant to 42 U.S.C. §1983. (Doc. 1). In his Complaint, Plaintiff asserts violations of his Eighth Amendment rights due to Defendants' alleged deliberate indifference to his serious medical needs arising from the treatment of his gallstones. *Id.* On November 23, 2021, the Court completed its preliminary review of

Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A. (Doc. 10). The Court allowed Plaintiff to proceed against Defendants with the following counts:

> **Count 1:** Eighth Amendment deliberate indifference claim against [Nurse Practitioner] Luking, Nurse Welty, [Dr.] Lynn Pittman, and [Healthcare Administrator] Lori Cunningham for misdiagnosing Williams and delaying his transfer to an outside hospital.
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Wexford Health Sources for failing to have a doctor present on Mondays."[1]

(Doc. 10, p. 3). Defendants filed the present Motion for Summary Judgment on the issue of exhaustion of administrative remedies along with their Memorandum of Support on August 10, 2022. (Doc. 33, 34). Plaintiff timely filed a Response in Opposition to the Motion on August 25, 2022. (Doc. 39).

## Factual Background

On November 28, 2019, Plaintiff submitted offender's grievance No. 12-19-48 complaining about the medical treatment he received at Lawrence Correctional Center ("Lawrence") on November 18, 2019.[2] (Doc. 1, p. 15-16). Plaintiff stated that the grievance was filed "against Healthcare Administrator Mrs. Cunningham for being deliberate[ly] indifferen[t] to [his] medical needs." *Id*. at p. 15. Plaintiff then recounted the events giving rise to his grievance with particular detail.

---

[1] Defendants Luking, Welty, and Pittman are employed by Wexford. The claim against Defendant Cunningham, an IDOC employee, was dismissed without prejudice for failure to state a claim. (Doc. 10, p. 4).

[2] The record reflects that while Defendants have supplied the Court with copies of grievances from Plaintiff's Grievance Record for consideration in relation to this matter, Plaintiff identified only one relevant grievance in his Complaint. (Doc. 34, Exh. B); (Doc. 1, p. 15-16). Given that most of the grievances supplied by Defendants are unrelated to the aforementioned allegations, only Plaintiff's identified grievance (No. 12-19-48) will be addressed.

Plaintiff explained that around 3:15 a.m. he was escorted to and from the healthcare unit where he was given "some pills for gas" after he had complained of severe abdominal pains. (Doc. 1, p. 15). Plaintiff stated that he was then returned to the unit around 7 a.m. in a wheelchair after he was found on the floor of his cell in excruciating pain. *Id*. Plaintiff was admitted to the infirmary, where he was left for seven hours while waiting for the x-ray technician to arrive; he was not given any pain medication during this time period. *Id*. at p. 15-16.

Around 2:30 p.m., Plaintiff was transferred to an outside hospital for emergency gallbladder removal surgery. (Doc. 1, p. 16). At the hospital, it was determined that the gallstones in Plaintiff's bladder were the source of his severe pain. *Id*. Plaintiff concluded his grievance by stating that "[t]he Healthcare [A]dministrator's refusal to get me the medical atten[t]ion I needed amounts to deliberate indifference" and that "her desire to save money for Wexford violated [his] rights." *Id*. Plaintiff did not explicitly name any other individual in the grievance.[3]

On December 3, 2019, a counselor at Lawrence received Plaintiff's grievance and conducted the first level review. (Doc. 1, p. 15). On January 2, 2020, Grievance Officer Livingston received the counselor's response; he conducted the second level review on January 23, 2020. *Id*. at p. 17. Livingston recommended, "based upon a total review of all available information," that the grievance be denied as "[Healthcare Administrator] Cunningham [did] not provide any information regarding the referenced date of

---

[3]  While providing a somewhat more thorough description of this medical event, Plaintiff also later named the Defendants in his Complaint, apparently identifying their names through a review of his medical records and through the assistance of a unit attendant, Calvin Clay. (Doc. 1, p. 14-15; *Id*. at 35).

[November 18, 2019]." *Id*. Livingston concluded that she was "unable to substantiate [Plaintiff's] claim." *Id*. On February 11, 2020, Plaintiff appealed this denial to the Administrative Review Board ("ARB") after the Chief Administrative Officer concurred with Livingston's recommendation on January 24, 2020. *Id*.

On February 18, 2020, the ARB received Plaintiff's appeal and recommended that the Acting Director remand the grievance to Lawrence to address Plaintiff's claim. (Doc. 1, p. 18). The ARB found that "the failure to receive a response to the offender's complaint is not grounds to deny the complaint." *Id*. It determined that it would conduct a final review after the Warden "ensure[d] the offender's medical complaint [was] addressed and documented on an amended" grievance response. *Id*.

On November 6, 2020, Corrections Counselor Ashley McCaslin emailed ARB Chairman Dave White to inform him that she would "send . . . a request to healthcare for additional information" regarding Plaintiff's remanded grievance. (Doc. 52, p. 94). McCaslin proceeded to send a memo addressed to "Healthcare" in which she requested additional information regarding the events on November 18, 2019. *Id*. at p. 92. The memo stated the following: "[y]ou have been identified in the attached grievance as having failed to do something or did something that the offender alleges is in violation of Statutory Requirements, Departmental Rules, Administrative Directives, Institutional Directives, or Policies and Procedures." *Id*. A response to the memo was submitted on November 10, 2020, which provided a review of Plaintiff's medical chart documentation from November 18, 2019. *Id*. The documentation noted details such as the times Plaintiff was seen by medical staff, names of said medical staff, and actions taken regarding his

treatment. *Id. See also* (Doc. 1, p. 13-14). The response concluded that the "physician and providers who are licensed to practice medicine determine plan of care and treatment" and that the Healthcare Administrator "does not medically treat offenders." (Doc. 52, p. 92). On November 25, 2020, the ARB denied Plaintiff's grievance in its final review, finding that Lawrence had properly addressed the issue. (Doc. 1, p. 18). Plaintiff later filed suit against Defendants on May 5, 2021. (Doc. 1).

## LEGAL STANDARDS

Summary judgment is proper when a moving party demonstrates that the record cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgment, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in its favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, the Court's role in determining the outcome of a motion for summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter. Instead, the Court's role is to determine whether a genuine issue of material fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, in *Pavey v. Conley*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies "are not required to be decided by a jury but are to be determined by the judge." 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, it is up to the Court to evaluate whether an inmate has exhausted administrative remedies when the affirmative defense of non-exhaustion is raised. If the

Court determines that an inmate did not exhaust administrative remedies, the plaintiff is given the opportunity to exhaust should time still permit or if the failure to exhaust was innocent.[4] *Id*. at 742. Alternatively, if the Court determines that the failure to exhaust was the plaintiff's fault, the case is over. *Id.*

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison or other correctional facility *until* such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). (emphasis added). When attempting to exhaust administrative remedies, prisoners must follow their prison's administrative rules. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). As an inmate confined within the IDOC, Plaintiff is required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("IDOC Grievance Procedures") to properly exhaust his claim. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the exhaustion requirement under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing untimely or otherwise procedurally defective

---

[4] *Pavey* provides that an "innocent" failure to exhaust includes situations where prison officials prevent prisoners from pursuing exhaustion of their administrative remedies. 544 F.3d at 742. Further, if an inmate submits a grievance and does not receive a response, the inmate's attempts at exhaustion will be deemed thwarted, and the inmate will be allowed to proceed with the lawsuit. *See, e.g., Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008)(noting that an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(indicating that a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his remedies).

grievances. *See Woodford v. Ngo*, 548 U.S. 81, 83 (2006). Nor may a prisoner file a lawsuit while he or she is simultaneously proceeding through the prison's grievance process. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

This result comports with the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford*, 548 U.S. at 93; *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). Additionally, the requirement of exhaustion provides prison administrations an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo,* 286 F.3d at 1023-24. Grievances are not intended "to put individual defendants on notice of a lawsuit" but rather serve to alert prison officials of issues affecting inmates. *Glick v. Walker*, No. 09-2472, 385 Fed. Appx. 579, 582 (7th Cir. July 13, 2010). Therefore, an inmate's failure to explicitly name defendants in a grievance is not fatal to exhaustion so long as the "grievance serve[s] its function by providing prison officials a fair opportunity to address [the] complaint." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). *See also Jones v. Bock*, 549 U.S. 199, 219 (2007)(explaining that "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances"). Instead, an inmate is only required to "articulat[e] what facts the prison could reasonably expect from a

prisoner in [his or her] position." *Glick*, 385 Fed. Appx. at 582 (highlighting that an inmate "need identify names only to the extent practicable").

To initiate the grievance process, the IDOC Grievance Procedures first require that inmates file a grievance with a counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). In the grievance, the prisoner must provide: "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id*. at (c). Nonetheless, an inmate is not "preclude[d] from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." *Id*.

Should the inmate not be satisfied with the counselor's response, the inmate can then submit a formal grievance to the prison's grievance officer. *See* 20 ILL. ADMIN. CODE § 504.810(a)-(b). The grievance officer must review the grievance and provide a written response to the inmate. *See* 20 ILL ADMIN. CODE § 504.830(a). Within 60 days of receipt of the grievance, when reasonably feasible under the circumstances, the grievance officer must report his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See id*. at (e). The CAO shall review the findings and recommendations from the grievance officer and advise the inmate of the decision in writing. *Id.* If the inmate is not satisfied with the CAO's decision, the inmate can then formally appeal to the Director through the ARB within 30 days of the CAO's decision. *See* ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the grievance officer's

report and the CAO's decision to the appeal. *See id.* The ARB then submits its written recommendation to the Director, who is responsible for issuing the IDOC's final decision within six months. *See id.* at (d)–(e).

## DISCUSSION

Defendants argue that Plaintiff has failed to properly exhaust his administrative remedies, because he "failed to file a grievance naming Defendants regarding the claims he has raised" in this suit. (Doc. 34, p. 6). Moreover, Defendants claim that the grievance did not "put the prison on notice of the claims against [the Defendants because] it was [not] expressly . . . directed at them." *Id.* at p. 7. Lastly, Defendants assert that the grievance did not "complain about a policy to not have physicians on site on Mondays [or] mention any issues with staffing whatsoever." *Id.* at p. 9.

1. **EXHAUSTION AS TO DEFENDANTS LUKING, WELTY, AND PITTMAN**

In Grievance No. 12-19-48, Plaintiff identified Healthcare Administrator Cunningham before describing the inadequate medical care he received on November 18, 2019. (Doc. 1, p. 15). Defendants Luking, Welty, and Pittman claim that the prison was not placed on notice as to their relevance to the incident because Plaintiff failed to name them in his grievance. (Doc. 34, p. 6). However, failing to name defendants alone is insufficient to assert a failure to exhaust. *See Jones*, 549 U.S. at 219. Rather, courts have found that plaintiffs may exhaust their grievances by providing sufficient information that would have put the prison on notice of a defendant's connection to the alleged wrong. *See Maddox*, 655 F.3d at 722.

While Grievance No. 12-19-48 did not name Defendants Luking, Welty, and Pittman directly, the grievance did include factual details about the November 18, 2019, incident itself. For instance, Plaintiff specified that an individual gave him pills for gas when he first arrived in the healthcare unit at 3:15 a.m. (Doc. 1, p. 15). Such factual details are sufficient to alert the prison that the quality of Plaintiff's medical care was at issue and would arguably cause the prison to identify the staff member working in the unit at the time of the incident by, for example, consulting the facility's work schedule. *Compare Flemming v. Shah*, Civil No. 12-761-GPM, 2013 WL 3033102, at *2, 4 (S.D. Ill. June 17, 2013)(finding that the plaintiff failed to exhaust because the prison would not have known that the defendant could have been involved in decisions regarding denial of medical treatment, especially without an explicit or implicit reference to her) *with Chaney v. Wall*, Case No. 19-cv-357-DWD, 2020 WL 6889244, at *4 (S.D. Ill. Nov. 24, 2020)(finding that a grievance with a description of an unnamed nurse's work schedule was sufficient while also finding a grievance lacking descriptors like dates or behavior of officers involved was insufficient).

A fair reading of the grievance should have alerted prison officials to the fact that Plaintiff was frustrated with the overall medical care he had received. Plaintiff specifically described various actions and/or inactions that were taken during his care (*e.g.*, prescribing pills for gas or leaving him unattended for several hours in the infirmary without any pain medication), which clearly indicated that Plaintiff was not solely grieving about the actions of Ms. Cunningham. Indeed, a simple review of Plaintiff's medical records would have easily revealed the providers involved in his care. *See, e.g.*,

*Cox v. Lashbrook*, Case No. 3:16-cv-1096-NJR-DGW, 2018 WL 5904399, at *5 (S.D. Ill. April 26, 2018)(highlighting that "it could have been no mystery to the prison who Plaintiff's treatment providers were[]" once the grievance officer reviewed medical records and contacted the health care unit); *Harper v. Henton*, No. 11-cv-406-MJR-SCW, 2012 WL 6595159, at *5 (S.D. Ill. Nov. 30, 2012)(asserting that prison administrators "could have easily viewed the medical records to determine which doctors and nurses treated Plaintiff or were responsible for his treatment[]" given that he provided them enough details regarding his medical care). *See also Brown v. Pfister*, Case No. 18-cv-6042, 2021 WL 1722771, at *10 (N.D. Ill. April 30, 2021)(noting that it was not necessary for the plaintiff to name the prison's medical director because he had clearly complained about the lack of access to medical care, which "naturally called into question the provider of the medical care, including the person running the department.").

Notably, in *Gordon v. Rogers*, Case No. 3:17-cv-1302-DRH-DGW, 2018 WL 6977338, at *1-2 (Oct. 16, 2018), the inmate sustained a leg injury for which he allegedly received inadequate care. When the inmate filed a grievance voicing his concerns, he did not name or describe several defendants, but he expressly named one defendant. *Id.* at *3. The grievance officer addressed the grievance on the merits after contacting the healthcare unit who informed them that the inmate "was seen by the doctor" on a certain date and "by the doctor or other healthcare professionals." *Id.* The court found that defendants could not claim that the grievance contained inadequate details "when […] there was sufficient information to address the merits of the grievance." *Id.* (noting that "[i]t could have been no mystery to the prison who [the inmate] was complaining about when he

indicated that he was not receiving adequate post-operative care). Specifically, the Court found that the "grievance served its function of notifying the prison there was a problem with the medical care he was receiving from Defendants" because it prompted a review of Gordon's medical records. *Id.* This review ultimately informed the prison of the specific providers whose actions the plaintiff was grieving about.

Like *Gordon*, the Plaintiff's grievance "served its function" of notifying the prison that there was a problem with the medical care he was receiving. Those who evaluated Plaintiff's grievance determined it to be medical in nature. Particularly, the ARB remanded the grievance back to Lawrence ordering the Warden to "ensure the offender's *medical* complaint [was] addressed and documented." (Doc. 1, p. 18) (emphasis added). When complying with this order, a prison official requested that the healthcare unit provide additional information regarding the events on November 18th, noting that the unit "had been identified in the grievance" as having harmed the Plaintiff. (Doc. 52, p. 92). A response to this official's request provided a review of Plaintiff's medical chart documentation which noted details such as when and from whom Plaintiff received care. *Id.* As such, Plaintiff's failure to specifically name the Defendants in his grievance does not amount to a failure to exhaust his administrative remedies.

At the hearing, Defendants also alluded to the notion that Plaintiff should be precluded from using descriptors because he knew the names of some of the Defendants at some point in time. *See, e.g.*, *Hoskins v. Johnson*, Cause No. 3:19-cv-01303-GCS, 2020 WL 7263286, at *5-6 (S.D. Ill. Dec. 10, 2020)(finding that a description of the defendant is insufficient when the plaintiff knew their name). Regardless of whether Plaintiff knew

the Defendants' names prior to or after the incident, the IDOC's regulations only require Plaintiff to "identify names only to the extent practicable." *Glick*, 385 Fed. Appx. at 582. Here, Plaintiff is not precluded from using descriptors because it is unreasonable to expect Plaintiff to have remembered the names and/or faces of those caring for him. This is especially true here given the fact that Plaintiff was in excruciating pain while he was in the infirmary – a pain which ultimately required Plaintiff to undergo surgery shortly thereafter.

In summary, Plaintiff's grievance should have, and did in fact, place the prison on notice that he was dissatisfied with the inadequate medical treatment he received on November 18, 2019. Given the description provided by Plaintiff in his grievance, prison officials were capable of identifying which providers were involved in his care through a review of Plaintiff's medical records and the facility's staffing records. Therefore, the Court **DENIES** summary judgment with respect to Count 1 of Plaintiff's Complaint.

2. **EXHAUSTION AS TO DEFENDANT WEXFORD (*MONELL* CLAIM)**

In Grievance No. 12-19-48, Plaintiff mentioned Wexford in describing the motivations behind Healthcare Administrator Cunningham's inaction during his medical care stating that she "desire[d] to save money for Wexford." (Doc. 1, p. 16). Wexford asserts that this alone is insufficient to put the prison on notice as to the relevance of a Wexford staffing policy or practice that contributed to his inadequate medical treatment. (Doc. 34, p. 9). The Court disagrees.

To exhaust remedies against a private contractor like Wexford, Plaintiff must have put the prison on notice that a corporate "policy or custom gave rise to the harm." *Howell*

*v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653-654 (7th Cir. 2021). *See also Reliford v. Ghosh*, No. 10 C 3555, 2011 WL 3704747, at *5 (N.D. Ill. Aug. 19, 2011)(explaining that the "policy must be the direct cause or moving force behind the constitutional deprivation"). As such, it is not necessary to directly name Wexford in a grievance to render it exhausted. *See, e.g.*, *Loving v. Gomez*, Case No. 19-cv-00029, 2022 WL 3026932, at *4 (N.D. Ill. Aug. 1, 2022)(highlighting that "the law does not require detailed specificity when Wexford is the defendant because 'grievances that complain of medical failures clearly invoke Wexford and its employees, who are charged with providing medical care to Illinois inmates'") (citing *Daval v. Zahtz*, Case No. 3:19-cv-50147, 2021 WL 2072127, at *5 n.5 (N.D. Ill. May 24, 2021)). Rather, "[c]ourts have held that grieving activities for which Wexford was responsible, or for which Wexford was involved in the decision-making process, are generally sufficient to put the prison on notice that the plaintiff was grieving a policy or practice of the corporation." *Morrow v. Wexford Health Sources, Inc.*, Case No. 3:20-cv-00664-GCS, 2021 WL 3030329, at *4 (S.D. Ill. July 19, 2021)(stating that a grievance of "broad denial of proper treatment by the health care unit as a whole" is likely sufficient to provide notice to Wexford regarding policies that "resulted in inadequate medical treatment"). A grievance is only considered unexhausted when an inmate "does not reference a specific policy or practice, or otherwise names responsible individuals, rather than attributing responsibility to Wexford." *Id.*

Here, Plaintiff alleged in his Complaint that "Wexford failed to provide a doctor on Mondays to treat inmates at Lawrence Correctional Center" and that because of said policy he "was forced to endure excruciating pain for over 7 hours" at the facility prior

to receiving treatment for his gallstones at a local hospital. (Doc. 1, p. 11). In Grievance No. 12-19-48, Plaintiff asserted that Cunningham's "refusal to get [him] the medical attention [he] needed" at the facility was motivated by "her desire to save money for Wexford." *Id.* at p. 16. While Plaintiff does not directly allege that Wexford has a policy not to staff doctors on Mondays in his grievance, Plaintiff's grievance does implicate a Wexford cost saving policy as influencing how Cunningham proceeded to care for Plaintiff during his gallstone episode. This is sufficient to put the prison administration and Wexford on notice of a potentially relevant policy that may have affected the delivery of care to Plaintiff. *See, e.g., Arce v. Wexford Health Services*, Case No. 3:18-cv-01348-SMY-GCS, 2019 WL 6702692, at *6 (S.D. Ill. Oct. 9, 2019)(finding that Plaintiff's discussion of Wexford's role in the scheduling and approval of his follow up care was sufficient to place Wexford on notice). Thus, the language used in Plaintiff's grievance should have been sufficient to lead prison officials to "believe that Plaintiff was . . . complaining about Defendant Wexford's policies or practices." *Morrow*, 2021 WL 3030329, at *5.

      Courts have acknowledged that requiring inmates to do more than Plaintiff did here to assert a *Monell* claim would be "preposterous." *Cohn v. Wexford Health Sources, Inc.*, Case No. 3:19-CV-00376-NJR, 2022 WL 2802304, at *4 (S.D. Ill. July 18, 2022)(acknowledging that "[r]equiring inmates with no formal legal education to articulate the subtleties of a *Monell* claim or a third-party beneficiary action on a grievance form is asking a lot.") (citing *Johnson v. Shah*, Case No. 15-CV-344-SMY-RJD, 2017 WL 119175, at *2 (S.D. Ill. Jan. 12, 2017)). While Plaintiff's grievance could have been more specific in describing the precise policy of Wexford's that he believes impacted his care,

he adequately articulated that such a policy negatively impacted the decision making of a staff member directly responsible for his care. As such, this Court finds that Grievance No. 12-19-48 was sufficient to place the prison and Wexford on notice of a potential policy or custom of Wexford that affected Plaintiff's care. Consequently, the Court **DENIES** summary judgment with respect to Count 3 of Plaintiff's Complaint.

## CONCLUSION

Accordingly, the Court **DENIES** the Motion for Summary Judgment as to Exhaustion of Administrative Remedies. (Doc. 33).

**IT IS SO ORDERED.**

**DATED: January 19, 2023.**

Digitally signed by Judge Sison 2
Date: 2023.01.19 11:02:53 -06'00'

_____
**GILBERT C. SISON**
**United States Magistrate Judge**