UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JAMES WILLIAMS, JR.,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**LYNN PITTMAN, CARISSA** )<br>**LUKING, TAMMY WELTY, and** )<br>**WEXFORD HEALTH SOURCES,** )<br>**INC.,** )<br>)<br>**Defendants.** ) | Case No. 3:21-cv-00448-GCS |

# MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Pending before the Court is Defendants' Motion for Summary Judgment. (Doc. 71). Defendants Lynn Pittman ("Pittman"), Carissa Luking ("Luking"), Tammy Welty ("Welty"), and Wexford Health Sources, Inc. ("Wexford") filed the Motion for Summary Judgment along with a Memorandum in Support on December 19, 2023. (Doc. 71, 72). Plaintiff, James Williams Jr., filed a Memorandum in Opposition to Defendants' Motion for Summary Judgment on December 27, 2023. (Doc. 75). For the reasons outlined below, the Court **GRANTS** Defendants' Motion for Summary Judgment. (Doc. 71).

## Procedural History

Plaintiff, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Danville Correctional Center ("D2anville"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 while he was housed at Lawrence Correctional Center ("Lawrence") in November 2019. (Doc. 1). In his

Complaint filed on May 5, 2021, Plaintiff alleges that Defendants were deliberately indifferent to his stomach pains in violation of the Eighth Amendment. *Id.*

On November 23, 2021, the Court conducted a preliminary review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A. (Doc. 10). The Court construed Plaintiff's Complaint into the following counts:

> **Count 1:** Eighth Amendment deliberate indifference claim against Luking, Nurse Welty, Lynn Pittman, and Lori Cunningham for misdiagnosing Williams and delaying his transfer to an outside hospital.
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Lacy Livingston and Deanna Brookhart for mishandling and denying Williams's grievance.
>
> **Count 3:** Eighth Amendment deliberate indifference claim against Wexford Health Sources for failing to have a doctor present on Mondays.

(Doc. 10, p. 3). Count 1 was allowed to proceed against Luking, Welty, and Pittman, but was dismissed without prejudice against Lori Cunningham for failure to state a claim. *Id.* at p. 4. Likewise, Count 2 was dismissed without prejudice against Lacy Livingston and Deanna Brookhart due to Plaintiff's failure to state claim. *Id.* at p. 4-5. However, Count 3 was permitted to proceed against Wexford. *Id.* at p. 5.

On August 10, 2022, Defendants Luking, Pittman, Welty, and Wexford filed a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies. (Doc. 33, 34). Plaintiff filed a Response in Opposition to the Motion on August 25, 2022. (Doc. 39). A hearing was held on the Motion on October 5, 2022. (Doc. 53). On January 19, 2023, the Court denied Defendants' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies. (Doc. 58). The Court then entered a Merits Scheduling

Order, setting the discovery deadline for November 20, 2023, and the dispositive motion deadline for December 19, 2023. (Doc. 59).

### FACTUAL BACKGROUND

On November 18, 2019, Plaintiff was taken to the healthcare unit at 3:10 am due to complaints of stomach pain – "indigestion/heart burn." (Doc. 72, Exh. 2, p. 1). At this time, Plaintiff was seen by a Licensed Practical Nurse ("LPN"). *Id.* Plaintiff reported to the LPN that his stomach pain began after supper and had been ongoing for the past four to five hours. *Id.* The pain was reportedly sharp and occurred in the middle of Plaintiff's chest, radiating to his back. *Id.* Upon examination, the LPN identified tenderness in the upper quadrant of Plaintiff's abdomen. *Id.* The LPN provided Plaintiff with an over-the-counter antacid to address his symptoms. *Id.*

Plaintiff was taken back to the healthcare unit again at 7:20 am. (Doc. 72, Exh. 2, p. 3). He was seen by Nurse Practitioner Luking.[1] *Id.* Luking performed an abdominal examination on Plaintiff and noted tenderness. *Id.* She also noted that Plaintiff had been given an antacid that did not provide him with any relief. *Id.* She assessed that Plaintiff was in acute, severe pain, specifically in the left upper quadrant of his abdomen. *Id.* In response, Luking ordered a KUB abdominal x-ray "now (when x-ray gets here," urine dip testing "now", CBC, CMP, Amylase, and Lipase blood tests "now," and administration of pain medication Toradol 30mg intramuscularly "now." *Id.* She kept

---

[1]   As a nurse practitioner, Ms. Luking can assess and treat patients for acute abdominal pain as it is within her scope of practice. (Doc. 72, Exh. 4, p. 3). It is a common, accepted practice in the medical community for patients to be seen by a nurse practitioner at a doctor's office or urgent care clinics for complaints of abdominal pain. *Id.*

Plaintiff in the infirmary for observation while the testing was being performed. *Id.*

At 7:30 am Plaintiff was seen by Defendant Welty.[2] (Doc. 72, Exh. 2, p. 2). Welty gave Plaintiff a 30 mg Toradol injection in his right deltoid, as instructed by Nurse Practitioner Luking. *Id.* While Plaintiff was in the infirmary, Plaintiff saw two additional nurses, and he did not say anything to them about his pain. (Doc. 72, Exh. 1, p. 44:21-45:7). Instead, at some point, Plaintiff told the prisoner porter, Calvin, that he was waiting for tests, but his pain was getting worse. *Id.* at p. 45:21-46:4. Later, Plaintiff was able to summon the corrections officer for assistance. *Id.* at p. 46:12-20. Shortly thereafter, Plaintiff says he was taken to the x-ray room. *Id.*

However, before the x-ray could be performed, another LPN checked on Plaintiff's status. (Doc. 72, Exh. 2, p. 4). The LPN elected to contact the MD on call – who happened to be Defendant Dr. Pittman. Given Plaintiff's status, Dr. Pittman ordered that Plaintiff be transferred "to RMH-Carle via ambulance." *Id.* Dr. Pittman had no other involvement in Plaintiff's care. (Doc. 72, Exh. 2, p. 4). At Carle Hospital, it was determined Plaintiff had gallstones and that he would benefit from gallbladder removal. (Doc. 72, Exh. 2, p. 17). The procedure was performed laparoscopically on November 19, 2019, with no complications. *Id.* Plaintiff was discharged back to the prison on November 20, 2019. *Id.*

---

[2] Ms. Welty worked the day shift on November 18, 2019 – from 6:49 am to 3:29 pm. (Doc. 72, Exh. 3, p. 1). She cannot diagnose or treat medical conditions. *Id.* Moreover, she is unable to order prescription pain medication. *Id.* at p. 2. Welty did not have any further interaction with Plaintiff on November 18, 2019, beyond administering his Toradol shot. *Id.*

## LEGAL STANDARDS

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). *See also Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009) (stating that "we are not required to draw every conceivable inference from the record . . . we draw only reasonable inferences") (internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in factfinding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Walker v. Shansky*, 28 F.3d 666, 670–671 (7th Cir. 1994), aff'd, 51 F.3d 276 (citing *Celotex*,

477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). In other words, "inferences relying on mere speculation or conjecture will not suffice." *Trade Finance Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (internal citation omitted).

## DISCUSSION

Defendants do not argue that Plaintiff's abdominal pain did not amount to a serious medical need. (Doc. 72, p. 8). Therefore, the Court will focus its analysis on whether Defendants' care of Plaintiff's abdominal pain amounted to deliberate indifference.

### A.     *Nurse Practitioner Luking*

Plaintiff argues that Defendant Luking exhibited deliberate indifference by not sending him to an outside hospital earlier. (Doc. 72, Exh. 1, p. 64:7-18). Defendants assert that Luking exhibited sound medical judgment when she instead prescribed Plaintiff

with pain medication and ordered that he be monitored in the infirmary while additional diagnostic tests were being performed. (Doc. 72, p. 9). The Court agrees with Defendants' position.

"How and how urgently – a patient needs to be treated is a question of medical judgment." *Martin v. Obaisi*, No. 17 C 04328, 2022 WL 523119, at *5 (N.D. Ill. Feb. 22, 2022) (holding that failure to immediately refer inmate to outside consultant was not deliberate indifference; doctor made reasonable medical judgment to delay referral until he had more information.) (citing *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 065 (7th Cir. 2019)). Plaintiff's argument implicitly assumes that his condition required emergent treatment. However, when Plaintiff was sent to Carle hospital, the staff there performed similar tests and waited until the next day to perform surgery on Plaintiff's gallbladder. Accordingly, Defendant Luking's treatment plan to provide Plaintiff with pain medication "now" and monitor him in the infirmary while tests were being performed "now" was not a substantial deviation from sound medical judgment. *See, e.g.*, *Owens v. Tripp*, Case No. 17-cv-1336-DWD, 2021 WL 2351051, at *4 (S.D. Ill. June 9, 2021) (finding no deliberate indifference where the physician monitored the plaintiff and recommended a course of treatment that addressed the plaintiff's pain; it also included regular monitoring prior to transfer to the emergency room when the plaintiff's condition did not improve.).

Moreover, the Court finds that Luking's management of Plaintiff's pain with Toradol did not amount to deliberate indifference. The Constitution only requires medical officials who know that an incarcerated patient is suffering to take "reasonable

measures" to alleviate that pain. *See Arnett v. Webster*, 658 F.3d 742, 753-754 (7th Cir. 2011). The Eighth Amendment does not guarantee complete pain relief or recovery. *See Snipes v. Detella*, 95 F.3d 586, 592 (7th Cir. 1996). "The administration of pain killers requires medical expertise and judgment." *Id.* at p. 591. To find that a pain medication decision amounted to deliberate indifference, a plaintiff must show that the recommendation was "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Arnett*, 658 F.3d at 751 (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)).

Here, Defendant Luking saw Plaintiff promptly upon arriving on her shift. She ordered tests and pain medication to be administered "now." Plaintiff's pain medication was then administered less than ten minutes later by Defendant Welty at 7:30 am. Luking's actions sought to address Plaintiff's pain and were appropriate given the unknown origin of the pain. Additionally, to the extent that Plaintiff is alleging that his pain got worse after he saw Defendant Luking, Plaintiff admitted that he did not tell any medical staff of his worsening pain.

**B.    *Nurse Welty and Dr. Pittman***

Plaintiff mistakenly named Ms. Welty as the nurse that saw him at 3:10 am.[3] Welty's only involvement in Plaintiff's care for his abdominal pain occurred when she administered Plaintiff's Toroidal injection at 7:30 am. (Doc. 72, Exh. 2, p. 2). Welty began her shift on November 18, 2019, at 6:39 am – well past 3:10 am - making it impossible that

---

[3]    Plaintiff recognized that the signatures contained in his medical records for his care provided at 3:10 am and 7:30 am were different. (Doc. 72, Exh. 1, p. 29:19-30:20).

she attended to Plaintiff prior to her arrival. Even if this Nurse did turn out to be Welty, when asked to describe what his complaint was against this nurse, Plaintiff responded that "she was the one that took his vital signs." (Doc. 72, Exh. 1, p. 31:1-4). Plaintiff did not lodge any specific complaint about this nurse's care.

As to Dr. Pittman, Plaintiff's complaint stems from his belief that had Pittman been contacted earlier, he would have been sent to the hospital sooner. However, Plaintiff has not pointed to any evidence in the record showing that Pittman was notified earlier than 1:30 pm on November 18th. (Doc. 72, Exh. 1, p. 44:9-16). Plaintiff conceded that "if she was just informed at 1:30 and then she ordered [him] to be sent out than [he] wouldn't have a complaint against Dr. Pittman." *Id.* at p. 44:9-11. Plaintiff's medical records indicate that the LPN called Pittman at 1:30 pm. (Doc. 72, Exh. 2, p. 4). Moreover, Pittman stated that she did not have a recollection of what time she was called, but indicated that "[p]er the medical records, [she] was called at 1:30 pm." (Doc. 72, Exh. 5, p. 1).

Given these factual circumstances, the Court finds that Defendant Welty's and Pittman's conduct did not amount to deliberate indifference to Plaintiff's abdominal pain.

C.   *Wexford Health Sources, Inc.*

In Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiff states his claim against Wexford as follows:

> Wexford Health Sources is contracted with the State of Illinois to provide medical care to inmates. Wexford fail[s] to employ a physician at Lawrence Correctional Center on Mondays. Had there been a physician available, I wouldn't have endured the excruciating pain for more than 13 hours. This practice will continue to cause inmates unnecessary pain and suffering.

(Doc. 75, p. 3); *see also* (Doc. 75, p. 5). Defendants assert that Plaintiff's argument sounds

most like a claim of *respondeat superior*, as they believe Plaintiff is arguing that because Wexford has a contract with the Illinois Department of Corrections to provide medical care to prisoners, that Wexford is liable for all medical care provided to IDOC's inmates. (Doc. 77, p. 2). Additionally, Defendants argue that Plaintiff's *Monell* claim must fail as a matter of law because he has failed to allege that the medical care he received amounted to deliberate indifference.

A private corporation, like Wexford, cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *See Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014). To establish an unconstitutional policy or custom, Plaintiff must show (1) he was deprived of a constitutional right, and (2) the deprivation was caused by a policy, custom, or practice of Wexford. *See Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694 (1978).

Plaintiff has failed to satisfy the first prong demonstrating he was deprived of a constitutional right. Plaintiff's situation is like the one in *Arce v. Wexford Health Sources Inc.*, 75 F.4th 673 (7th Cir. 2023). In *Arce*, the plaintiff argued that Wexford's system of collegial review and its policy of requiring its medical providers to prefer certain medications violated his Eighth Amendment rights because it led to him being denied an outside follow-up appointment; it also prevented him from having access to certain pain medications. *Arce*, 75 F.4th at 681. Upon reviewing the plaintiff's claims, the Seventh Circuit determined that Arce had "provide[d] no evidence that the medical treatment he received in response to his initial leg injury, subsequent blood clot, and . . . ongoing pain

was inadequate." *Id.* at 682. Thus, the Court concluded that Plaintiff's claims against Wexford failed because he could not demonstrate that a Wexford policy was what led to his harm, as no constitutional harm occurred. *Id.* (citing *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1035 (7th Cir. 2019)). The same is true in the instant case. Plaintiff has failed to demonstrate that any of the medical care provided by the Wexford employees amounted to deliberate indifference. *See supra* p. 6-9. As such, Plaintiff has failed to prove he suffered a constitutional harm, and thus, he cannot assert a *Monell* claim against Defendant Wexford.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. (Doc. 71). The Court finds in favor of Defendants Welty, Luking, Pittman, and Wexford, and against Plaintiff.

In an abundance of caution, and noting Plaintiff's *pro se* status, the Court advises Plaintiff as follows. Plaintiff has two means of contesting this order: (1) he may request this Court review this order; or (2) he may appeal the order to the Seventh Circuit Court of Appeals.

If Plaintiff chooses to request this Court to review this order, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). Plaintiff *must* file the motion within twenty-eight (28) days of the entry of judgment; the deadline *cannot* be extended. *See* FED. R. CIV. PROC. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the

Court should reconsider the judgment. *See Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) (stating that a party must establish either manifest error of law or fact, or that newly discovered evidence precluded entry of judgment to prevail on a Rule 59(e) motion) (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be tolled. *See* FED. R. APP. PROC. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. *See* FED. R. APP. PROC. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). However, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not toll the time for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor,* 556 F.2d 818, 819–820 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.

Alternatively, if Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal from the entry of judgment or order appealed from *within 30 days*. *See* FED. R. APP. PROC. 4(a)(1)(A) (emphasis added). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. *See* FED. R. APP. PROC. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and

excusable neglect standards); *Abuelyaman v. Illinois State University*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

Plaintiff may appeal to the Seventh Circuit by filing a notice of appeal in this Court. *See* FED. R. APP. PROC. 3(a). The current cost of filing an appeal with the Seventh Circuit is $605.00. The filing fee is due at the time the notice of appeal is filed. *See* FED. R. APP. PROC. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion"). *See* FED. R. APP. PROC. 24(a)(1). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. PROC. 24(a)(1)(C). If Plaintiff is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2).

**IT IS SO ORDERED.**

DATED: September 30, 2024.

Gilbert C Sison
Digitally signed by Gilbert C Sison
Date: 2024.09.30 22:03:43 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**